# EXHIBIT 1

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (as may be amended or modified from time to time, this "<u>Agreement</u>") is made and entered into as of April 25, 2011, by and among (a) North American Petroleum Corporation USA ("<u>NAPCUS</u>"), Prize Petroleum LLC ("<u>Prize</u>") and Petroflow Energy Ltd. ("<u>Petroflow</u>," and collectively with NAPCUS and Prize, the "<u>Debtors</u>"), (b) Texas Capital Bank, N.A. and Compass Bank (collectively with all lenders parties to the Credit Agreement (as defined below) from time to time, the "<u>Lenders</u>"), and (c) Equal Energy US Inc. and Equal Energy Ltd. (collectively, "<u>Equal</u>"). The Debtors, the Lenders and Equal are individually referred to as a "<u>Party</u>" and collectively referred to as the "<u>Parties</u>."

## Recitals

WHEREAS, Compass Bank, successor in interest to Guaranty Bank, FSB, as administrative agent, and Texas Capital Bank, N.A., as agent, under the Amended and Restated Credit Agreement dated August 22, 2005 (as amended, supplemented or otherwise modified from time to time and as in effect prior to the Petition Date (as defined below), the "<u>Credit Agreement</u>"), by and among NAPCUS and Prize, as borrowers, and the lenders party thereto from time to time;

WHEREAS, Equal and the Debtors are or were parties to various agreements governing their commercial relationships, including, but not limited to, (a) that certain farmout agreement dated as of March 1, 2006 (the "<u>Farmout Agreement</u>"), (b) that certain joint operating agreement dated as of March 1, 2006 (the "<u>JOA</u>") and (c) that certain capital recovery agreement dated as of March 1, 2006 (collectively, the "<u>NAPCUS-Equal Agreements</u>");

WHEREAS, on May 25, 2010 (the "<u>Petition Date</u>"), NAPCUS and Prize, and on August 20, 2010, Petroflow, each commenced voluntary cases (the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>");

WHEREAS, Lenders assert that they maintained secured claims in excess of $102,000,000 against NAPCUS and Prize on the Petition Date on account of all claims arising under the Credit Agreement (collectively, the "<u>Credit Agreement Claims</u>");

WHEREAS, on July 15, 2010, (a) the Debtors commenced an adversary proceeding against Equal, which has been docketed with the Bankruptcy Court as <u>N. Am. Petroleum Corp. USA v. Equal Energy U.S. Inc. et al.</u> (<u>In re N. Am. Petroleum Corp. USA</u>), Adv. Case No. 10-51675 Case No. 10-51624 (CSS) (Bankr. D. Del.) and (b) Lenders commenced an adversary proceeding against the Debtors and Equal, which has been docketed with the Bankruptcy Court as <u>Compass Bank et al. v. N. Am. Petroleum Corp. USA</u> (<u>In re N. Am. Petroleum Corp. USA</u>), Adv. Case No. 10-51624 Case No. 10-11707 (CSS) (Bankr. D. Del.) (collectively, the "<u>Adversary Proceedings</u>");

WHEREAS, on March 16, 2011, the Debtors and Equal executed that certain non-binding letter of understanding (the "<u>Letter of Understanding</u>") setting forth certain material terms of an agreement regarding the disposition of their disputes, and intend to execute that

certain asset purchase agreement (the "Equal APA"), substantially in the form attached hereto as Exhibit A (provided that any change to the Equal APA from that attached hereto must be approved by Lenders), which provides for (a) transfer of certain of the Debtors' assets to Equal, (b) payment by Equal of $92,500,000 (later increased to $93.5 million by agreement between the Debtors and Equal), less $5,800,000.00 (later reduced to $5,779,929 by agreement between the Parties), an amount asserted by Equal to be owed by the Debtors to Equal for certain joint interest billing statements under the JOA (notwithstanding any orders entered by the Bankruptcy Court in the Adversary Proceedings that affect the JOA), and subject to certain other adjustments as provided in the Equal APA (the funds which at closing of the Equal APA are payable by Equal or are to be released from Escrow Deposit (as defined in the Equal APA) pursuant to Section 10.1 of the Equal APA are referred to herein as the "Equal APA Consideration"), and (c) suspension by the Debtors of any marketing efforts in connection with their assets subject to standard fiduciary obligations;

WHEREAS, the Parties have agreed to resolve their disputes based on the terms of this Agreement, which includes a mutual release of any and all claims against one another. Lenders will receive $98.0 million in cash (the "Debtor Payment Amount") and the assignment of certain tax rebates and refunds, in consideration for which, Lenders will release all their liens and deem the Credit Agreement Claims satisfied in full;

WHEREAS, the Parties agree that the implementation of the various agreements among the Parties are dependent upon one another. Specifically, the closing of the Equal APA is expressly contingent upon Debtors' and Equal's simultaneous performance of their obligations hereunder to Lenders. In furtherance thereof the Parties agree that all simultaneous obligations hereunder and under the Equal APA shall be accomplished through the services of an escrow agent (the "Escrow Agent"); and

WHEREAS, in order to avoid further expense, inconvenience, delay and uncertainty, the Parties, by this Agreement, hereby desire and intend to (a) upon the occurrence of the Settlement Effective Date (as defined below) settle, compromise and dispose of any and all claims and causes of action of every kind and character, known or unknown, existing or contingent, that the Parties have or may have against each other, including without limitation any and all claims and causes of action under the NAPCUS-Equal Agreements, any and all claims and causes of action the Lenders may have against the Debtors on account of or related to the Credit Agreement Claims, and any and all claims and causes of action that were, could have been or could be asserted by the Parties against each other in the Chapter 11 Cases or the Adversary Proceedings and (b) agree to all other terms and provisions contained herein.

## Agreements, Covenants and Releases

NOW THEREFORE, in consideration of the recitals, covenants, agreements, representations, payments, transfers, and releases contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

(1) **Stipulated Amounts.** The Parties hereby stipulate that (i) the Lenders' Credit Agreement Claims and all liens securing the same are valid, perfected, unavoidable, fully

2

secured and in an amount of at least $102,000,000, and (ii) the Debtors owe Equal $5,779,929 for certain joint interest billing statements under the JOA.

(2)     **Escrow Agent.** Bank of Oklahoma shall serve as Escrow Agent under this Agreement. Any fees due to Escrow Agent shall be born equally by Lenders, Debtors, and Equal. The Parties instruct the Escrow Agent to accept the various documents and funds required to be delivered by the Parties pursuant hereto and by Equal and Debtors pursuant to the Equal APA and, upon receipt of all necessary documents and funds, to deliver them as directed herein and by the Equal APA.

(3)     **Closing of Equal APA.** On the date of closing of the Equal APA (the "Equal APA Closing Date"), which shall occur simultaneously with the occurrence of the Settlement Effective Date hereunder, and as set forth in and pursuant to the Equal APA, Equal and Debtors will take certain actions regarding, among other things, the transfer by Debtors to Equal of the Purchase Properties, as defined in the Equal APA, and the payment therefore by Equal. One of the actions required of Debtors at closing of the Equal APA is that the Debtors shall transfer and assign to Equal 30% of their rights to certain state tax refunds and rebates, by execution and delivery of the Assignment of Tax Rebate Interest attached as Exhibit C to the Equal APA (the "Equal Tax Rebate Assignment"), free and clear of all liens, claims, encumbrances and other interests.

Notwithstanding anything in the Equal APA to the contrary, the Parties agree that a condition to the closing of the Equal APA shall be the simultaneous closing of this Agreement and, further, agree that the closing of the Equal APA shall be accomplished through the Escrow Agent, that is, any documents or funds required to be delivered by either Equal or Debtors at closing of the Equal APA shall be delivered to the Escrow Agent.

(4)     **Consideration from Equal.** Equal and the Debtors agree that upon closing of the Equal APA, the Equal APA Consideration shall be indefeasibly and irrevocably paid to the Escrow Agent, free and clear of all liens, claims, encumbrances and other interests (other than any liens or other interests of the Lenders), for the exclusive benefit of Lenders and that each will issue such instructions and take such other actions as shall be necessary to accomplish such result.

(5)     **Consideration from Debtors to Lenders.** Simultaneously with its execution and delivery of a conveyance of the Purchase Properties pursuant to the Equal APA and in full and final settlement, satisfaction, release and waiver of any and all claims of Lenders against the Debtors, as provided below, including, without limitation, the Credit Agreement Claims: (i) the Debtors shall irrevocably and indefeasibly pay to Lenders, free and clear of all liens, claims, encumbrances and other interests, the difference between the Equal APA Consideration paid to the Escrow Agent for the exclusive benefit of Lenders, and the Debtor Payment Amount, in cash, inclusive of the currently suspended revenues on deposit at Texas Capital Bank, N.A. in the approximate amount of $7.5 million (which suspended revenues shall also be irrevocably and indefeasibly retained by Lenders free and clear of all liens, claims, encumbrances and other interests); (ii) the Debtors shall irrevocably and indefeasibly transfer and assign to Lenders 70% of their rights to certain state tax refunds and rebates, by execution and delivery of the Assignment of Tax Rebate Interest attached hereto as Exhibit B (the "Lenders Tax Rebate

3

Assignment", and together with the Equal Tax Rebate Assignment, the "Tax Rebate Assignments"), free and clear of all liens, claims, encumbrances and other interests; and (iii) Equal and Debtors shall and do hereby irrevocably instruct Escrow Agent to deliver to Lenders, on the Settlement Effective Date, the Equal APA Consideration delivered to the Escrow Agent for the exclusive benefit of Lenders.

(6)     **Tax Rebate Assignments.**  At closing of the Equal APA, the applicable Parties shall execute and deliver the Tax Rebate Assignments to the Escrow Agent for the exclusive benefit of Lenders and Equal respectively.

(7)     **Settlement and Releases.**  Simultaneously with, but effective only upon, the closing of the Equal APA and the delivery to Lenders of all funds and documents required hereby, the Parties each agree that the following mutual release in full and final satisfaction, settlement, release and waiver of claims as stated herein, for which each Party has received good and adequate consideration as set forth herein, shall be effective:

(i)     Effective on the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, the Debtors, and each of their bankruptcy estates, on behalf of themselves, their successors and assigns and any person claiming by, through or under any of them (including without limitation, their respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and all of such entities' (including the Debtors') officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors (including the Debtors as reorganized pursuant to a chapter 11 plan and any trustee that may be appointed in the Chapter 11 Cases or any subsequent chapter 7 bankruptcy), predecessors, legal representatives and/or attorneys) (all of whom are sometimes hereinafter individually and collectively referred to as the "Debtor Releasors"), do hereby **FULLY RELEASE AND FOREVER DISCHARGE** the Lenders and their respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and all of such entities' officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, independent members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors, predecessors, legal representatives and/or attorneys (all of whom are sometimes hereinafter individually and collectively referred to as the "Lender Releasees") of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Debtor Releasors now have, ever had, or in the future

4

may have or could claim against the Lender Releasees for, upon or by reason of any matter, cause or thing, including specifically, but not limited to, any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, or (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Debtor Releasors (x) do **NOT** release the Lender Releasees from any obligations, representations and warranties under this Agreement, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement, and (y) do **NOT** release any claim against the Lender Releasees for breach of the terms of this Agreement;

(ii)     Effective on the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, the Debtor Releasors do hereby **FULLY RELEASE AND FOREVER DISCHARGE** Equal and its respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and, in their respective capacities as such, all of such entities' officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, independent members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors, predecessors, legal representatives and/or attorneys (all of whom are sometimes hereinafter individually and collectively referred to as the "Equal Releasees") of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Debtor Releasors now have, ever had, or in the future may have or could claim against the Equal Releasees for, upon or by reason of any matter, cause or thing, including specifically, but not limited to, any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, or (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Debtor Releasors (x) do **NOT** release the Equal Releasees from any obligations, representations and warranties under this Agreement and the Equal APA, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement and the Equal APA, (y) do **NOT** release any claim against the Equal Releasees for breach of the terms of this Agreement or the Equal APA, and (z) do **NOT** release any owner of either a working interest or leasehold interest, whether a person or entity, other than Equal, in that person's or entity's capacity as either a working interest owner or leasehold interest owner, from any claim involving any

5

obligation or liability that may now or hereafter be due or owing to the Debtor Releasors;

(iii)     Effective on the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, Equal, on behalf of themselves, their successors and assigns and any person claiming by, through or under any of them (including without limitation, their respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and all of such entities' officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors, predecessors, legal representatives and/or attorneys (all of whom are sometimes hereinafter individually and collectively referred to as the "Equal Releasors"), do hereby **FULLY RELEASE AND FOREVER DISCHARGE** the Debtors, and each of their bankruptcy estates, their respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and, in their respective capacities as such, all of such entities' officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, independent members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors (including the Debtors as reorganized pursuant to a chapter 11 plan), predecessors, legal representatives and/or attorneys (all of whom are sometimes hereinafter individually and collectively referred to as the "Debtor Releasees") of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Equal Releasors now have, ever had, or in the future may have or could claim against the Debtor Releasees for, upon or by reason of any matter, cause or thing, including specifically, but not limited to, any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, and (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Equal Releasors (x) do **NOT** release the Debtor Releasees from any obligations, representations and warranties under this Agreement and the Equal APA, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement and the Equal APA, (y) do **NOT** release any claim against the Debtor Releasees for breach of the terms of this Agreement or the Equal APA, and (z) do **NOT** release any owner of either a working interest or leasehold interest, whether a person or entity, other than Debtors, in that person's or entity's capacity as either a working interest

6

owner or leasehold interest owner, from any claim involving any obligation or liability that may now or hereafter be due or owing to the Equal Releasors;

(iv) As of the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, the Equal Releasors do hereby **FULLY RELEASE AND FOREVER DISCHARGE** the Lender Releasees of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Equal Releasors now have, ever had, or in the future may have or could claim against the Lender Releasees for, upon or by reason of any matter, cause or thing related to the Debtors, the events, transactions, facts and/or allegations made the subject of the Chapter 11 Cases, the Adversary Proceedings or the NAPCUS-Equal Agreements, including specifically, but not limited to, any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, and (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Equal Releasors (x) do **NOT** release the Lender Releasees from any obligations, representations and warranties under this Agreement, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement, and (y) do **NOT** release any claim against the Lender Releasees for breach of the terms of this Agreement;

(v) Effective on the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, the Lenders, for themselves, their successors and assigns, and any person or entity claims by, through or under any of them (including, without limitation, each of their respective past, present and/or future, direct and/or indirect, parents, subsidiaries, divisions and affiliates, and for, in their respective capacities as such all of such entities' officers, directors, shareholders, agents, partners, partnerships, joint venturers, members, managers, employees, administrators, representatives, trustees, insurers, assigns, successors, predecessors, legal representatives and/or attorneys) (all of whom are sometimes hereinafter individually and collectively referred to as the "Lender Releasors"), do hereby **FULLY RELEASE AND FOREVER DISCHARGE** the Debtor Releasees of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or

7

other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Lender Releasors now have, ever had, or in the future may have or could claim against the Debtor Releasees for, upon or by reason of any matter, cause or thing, including specifically, but not limited to, any and all claims and causes of action the Lenders may have against the Debtors on account of or related to the Credit Agreement Claims and any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, and (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Lender Releasors (x) do **NOT** release the Debtor Releasees from any obligations, representations and warranties under this Agreement, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement, and (y) do **NOT** release any claim against the Debtor Releasees for breach of the terms of this Agreement;

(vi)     Effective on the Settlement Effective Date, and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment, the Lender Releasors do hereby **FULLY RELEASE AND FOREVER DISCHARGE** the Equal Releasees of and from any and all claims (and any liens asserted with respect to such claims), actions, causes of action and/or liabilities, rights to offset, setoff or recoupment, damages, exemplary damages, attorneys' fees, costs, interest, or other relief of any kind or character whatsoever, whether sounding in contract or in tort, whether intentional, fraudulent or negligent, whether pursuant to state or federal statute or at common law, whether at law or in equity, whether now known or unknown, suspected or unsuspected, matured or not matured, direct or indirect, fixed or contingent, liquidated or unliquidated, which the Lender Releasors now have, ever had, or in the future may have or could claim against the Equal Releasees for, upon or by reason of any matter, cause or thing related to the events, transactions, facts and/or allegations made the subject of the Chapter 11 Cases, the Adversary Proceedings and the NAPCUS-Equal Agreements, including specifically, but not limited to, any and all claims or causes of action (i) relating to the Credit Agreement, (ii) that were asserted or could have been asserted in the Chapter 11 Cases or the Adversary Proceedings, and (iii) arising out of any act, occurrence, transaction, or omission occurring at any time prior to the Settlement Effective Date; **EXCEPT THAT**, the Lender Releasors (x) do **NOT** release the Equal Releasees from any obligations, representations and warranties under this Agreement, which shall **ONLY** be released, satisfied or discharged in accordance with the terms of this Agreement, and (y) do **NOT** release any claim against the Equal Releasees for breach of the terms of this Agreement;

6089232v.13

(vii)    Effective on the Settlement Effective Date and Lenders' irrevocable and indefeasible receipt, free and clear of all liens, claims, encumbrances and other interests, of the Debtor Payment Amount and the Lenders' Tax Rebate Assignment the Lenders release any and all liens, claims, encumbrances and other interests against the assets conveyed by the Debtors pursuant to the Equal APA, with any and all such liens, claims, encumbrances and other interests in favor of Lenders against such assets attaching to the Equal APA Consideration and any other consideration paid or payable by Equal to Debtors;

(viii)   **IT IS THE EXPRESS INTENTION OF THE PARTIES THAT THE RELEASES GRANTED HEREIN SHALL FULLY RELEASE, WITHOUT LIMITATION, ANY AND ALL OF THEIR CLAIMS AGAINST EACH OTHER BASED UPON OR ARISING OUT OF ANY CONDUCT, ACTS, OMISSIONS OR ALLEGED VIOLATIONS OF LAW IN ANY FORM OR FASHION RELATED TO THE EVENTS, TRANSACTIONS, FACTS AND/OR ALLEGATIONS MADE THE SUBJECT OF THE CHAPTER 11 CASES OR THE ADVERSARY PROCEEDINGS, INCLUDING WITHOUT LIMITATION ANY CLAIMS OR CAUSES OF ACTION ARISING FROM THE NEGLIGENCE, THE GROSS NEGLIGENCE, OR THE WILLFUL MISCONDUCT OF ANY OF THE RELEASED PARTIES;** and

(ix)     Notwithstanding any other provision of this Agreement, the Parties agree that the releases given herein shall not constitute a release by any of the Parties hereto of any claim to enforce, or for breach of, the terms and provisions of this Agreement.

    **(8)     Cancellation of Credit Agreement.**  Simultaneously with but effective only upon, the closing of the Equal APA and the occurrence of the Settlement Effective Date and the irrevocable and indefeasible delivery to Lenders of Debtor Payment Amount and the Lenders' Tax Rebate Assignment free and clear of all liens, claims, encumbrances and other interests, the Credit Agreement and all instruments, certificates and other documents related thereto shall be cancelled, and all remaining obligations of the Debtors thereunder, or in any way related thereto (other than obligations under this Agreement), shall be waived and released by Lenders. Lenders shall cooperate with the Debtors in, among other things, providing whatever releases of lien or similar documents are reasonably required to effectuate such waivers and releases.

    **(9)     Covenants Regarding Chapter 11 Plan.**  The Lenders and Equal shall not object to or oppose: (a) confirmation of any Chapter 11 plan proposed by the Debtors in the Chapter 11 Cases (a "Plan"); or (b) any other action taken by the Debtors in the Chapter 11 Cases; provided that the Plan and any such action taken by the Debtors is consistent with this Agreement, and otherwise does not prevent or delay the Debtors from consummating, all aspects of this Agreement and the Equal APA, and the Debtors are moving forward in good faith toward Bankruptcy Court approval and timely consummation of the Equal APA and this Agreement.

    **(10)     Bankruptcy Court Approval.**  The Parties agree that they will seek the entry of an order by the Bankruptcy Court authorizing the implementation of all actions contemplated by this Agreement and the Equal APA. Such order of the Bankruptcy Court shall provide, among

9

other things, that all of Lenders' obligations and the Debtors' conveyance of assets pursuant to the Equal APA are contingent on Debtors' simultaneous satisfaction of all of their obligations to Lenders hereunder. Equal and Debtors agree that Debtors will have no obligation to close under the Equal APA nor shall either Debtors or Equal have any right to convey or to accept the conveyance, respectively, of any properties pursuant to the Equal APA or otherwise if Debtors and Equal are unable to fulfill or otherwise do not in fact fulfill all of their obligations under this Agreement, including causing the irrevocable and indefeasible delivery to the Lenders of the Debtor Payment Amount and the fully executed Lenders Tax Rebate Assignment free and clear of all liens, claims, encumbrances and other interests and the granting of the releases specified above, and no such order seeking such authorization shall be proposed by any Party, adopted, or implemented which authorizes the execution or implementation of any agreement between Debtors and Equal that is not so limited. In the event that this Agreement is not approved by the Bankruptcy Court, the Parties shall be restored to their respective positions in the Chapter 11 Case and the Adversary Proceeding. In such event, the terms, provisions, acknowledgements, representations, covenants and/or warranties of this Agreement shall have no further force and effect with respect to the Parties, and shall not be used in any action or proceeding, including, but not limited to, the Chapter 11 Case and the Adversary Proceeding, for any purpose. Equal will fund a deposit in escrow with Escrow Agent equal in amount to 5% of the Purchase Consideration (as defined in the Equal APA) pending approval by the Bankruptcy Court and consummation of this Agreement, which deposit shall be refunded immediately to Equal if an order approving this Agreement has not been entered on or before May 19, 2011.

      **(11) Conditions to Closing.** The Equal APA shall not close and the Escrow Agent shall not deliver fund or documents unless and until the Escrow Agent is in possession of all funds and documents required to be delivered to Lenders hereunder and has the right and power, to deliver those fund and documents to Lenders. All such deliveries shall be simultaneous. The date of effectiveness of this Agreement (the "<u>Settlement Effective Date</u>") shall be the date on which all of the following conditions have been satisfied or waived with the written consent of the Parties:

      (i)      entry of a final and non-appealable order by the Bankruptcy Court approving this Agreement and the Equal APA and the implementation of all actions contemplated hereby and thereby;

      (ii)      execution by the Parties of this Agreement on or before April 25, 2011 (or such later date as the Parties may agree);

      (iii)      the stay of the Adversary Proceedings agreed to by the Debtors and Equal in the Letter of Understanding remains in place and is continuing;

      (iv)      all documents and funds required for the closing of the Equal APA have been delivered to the Escrow Agent; and

      (v)      the Escrow Agent has irrevocably and indefeasibly delivered (i) $98,000,000 in cash and the fully executed Lenders Tax Rebate Assignment to the Lenders and (ii) the fully executed Equal Tax Rebate Assignment to Equal, all free and clear of

all liens, claims, encumbrances and other interests (other than any liens or other interests of the Lenders).

If the Settlement Effective Date does not occur on or before June 1, 2011, then, unless instructed otherwise by written instruction executed by all Parties, the Escrow Agent shall return all funds and documents to the Party tendering them and the Parties shall be restored to their respective positions in the Chapter 11 Case and the Adversary Proceeding. In such event, the terms, provisions, acknowledgements, representations, covenants and/or warranties of this Agreement shall have no further force and effect with respect to the Parties, and shall not be used in any action or proceeding, including, but not limited to, the Chapter 11 Case and the Adversary Proceeding, for any purpose.

(12) **Dismissal of Adversary Proceedings.** No later than one (1) business day after the Settlement Effective Date, the Parties hereby agree to (i) file joint notices in the Adversary Proceedings providing for consensual and mutual dismissal of the Adversary Proceedings with prejudice and (ii) file joint motions in the Chapter 11 Cases and the Adversary Proceedings requesting that the Bankruptcy Court withdraw its (a) "Preliminary Findings of Fact and Conclusions of Law," dated January 24, 2011, (b) "Findings of Fact and Conclusions of Law," dated February 18, 2011, and (c) "Order Granting, In Part, Count 1 Of Debtors' Adversary Proceeding; Denying, In Part, Counts 2 And 7 Of Debtors' Adversary Proceeding; And Granting, In Part, Equal Energy's Administrative Claim", dated March 4, 2011.

(13) **Successors and Assigns.** The provisions of this Agreement shall be binding on the Parties, their respective heirs, representatives, successors and assigns or anyone attempting to claim through said Parties, and shall inure to the benefit of the Parties, their respective heirs, representatives, successors and assigns.

(14) **Assignability.** Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by any Party without the prior written consent of the Parties; provided however that the assignability of the Equal APA shall be exclusively governed by the terms of the Equal APA.

(15) **Governing Law.** This Agreement and any disputes in connection with, arising from, or relating in any way to this Agreement, or its subject, formation, validity, performance, interpretation or enforcement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, excluding the conflict of laws provisions thereof. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Bankruptcy Court, or to the extent the Bankruptcy Court does not have subject matter jurisdiction, a state or federal court of competent jurisdiction in the State of Delaware. By execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably accepts and submits itself to the nonexclusive jurisdiction of each such court, generally and unconditionally, with respect to any such action, suit or proceeding. Notwithstanding anything to the contrary in this paragraph 15, the Equal APA shall be governed by the provisions therein.

6089232v.13

**(16)  Execution in Counterpart.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signatures to this Agreement transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature, and shall be binding on the Parties.

**(17)  Time is of the Essence.** The Parties agree that time is of the essence to both Equal and the Lenders in closing this matter by the Settlement Effective Date, including closing of the Equal APA, the delivery of the fully executed Tax Rebate Assignments to Lenders and Equal, respectively, and the Lenders' irrevocable and indefeasible receipt of the $98.0 million cash payment on the Settlement Effective Date, and no Party shall have any implied duty to extend the Settlement Effective Date, and each Party may refuse to extend the Settlement Effective Date for any reason or no reason.

**(18)  No Third-Party Beneficiary.** Nothing in this Agreement, whether express or implied, shall be construed to give any legal or equitable right, remedy, interest or claim under or in respect of this Agreement, to (a) the Lenders with respect to agreements and understandings set forth in this Agreement between, solely, the Debtors and Equal, (b) Equal with respect to agreements and understandings set forth in this Agreement between, solely, the Debtors and the Lenders, and (c) any third parties with respect to any agreements or understandings set forth in this Agreement by, between or among the Parties.

**(19)  Compliance With Rule 11.** The Parties hereby acknowledge that each of the Parties and their lawyers have acted in accordance with Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 7011 at all times in both the pursuit and defense of the claims and related defenses in the Chapter 11 Cases and the Adversary Proceedings.

**(20)  Consultation With Counsel.** The Parties acknowledge that they have consulted with and received advice from such legal counsel and/or other advisors as deemed necessary relative to this matter, including the terms of this Agreement and the advisability of executing this Agreement.  Each Party represents and warrants that it/he/she understands the legal effect and content of this Agreement, and is executing same as its/his/her own knowing and voluntary act and deed.

**(21)  Agreement Prepared By All Parties.** This Agreement has been negotiated and prepared at the mutual request, direction, and construction of all the Parties, at arms' length, with the advice and participation of legal counsel, and will be interpreted in accordance with its terms without favor to any Party.

**(22)  Complete Writing.** This Agreement contains the full and complete understanding of the Parties with respect to the settlement contemplated hereby, and no statements, representations, understandings, writings or other communications made prior to the execution of this Agreement, unless expressly contained herein, shall be binding on the Parties; provided however that, to the extent of any conflict between this Agreement and the Equal APA, this Agreement shall control unless and until the Lenders have indefeasibly and irrevocably

12

received $98 million, the Lenders Tax Rebate Assignment, and the releases in favor of Lenders all as provided for in this Agreement. Only after such receipt by Lenders, to the extent of any conflict between this Agreement and the Equal APA the Equal APA shall control. This Agreement shall not work a novation of or, pending the occurrence of the Settlement Effective Date, otherwise affect the Lenders' and Debtors' respective rights and obligations under the Credit Agreement or any documents executed in connection therewith.

(23)    **Additional Documentation.**  The Parties agree to execute, acknowledge and deliver to each other such other documents, and to cooperate and exercise all reasonable efforts necessary to do such other acts and things, all as the other Party may reasonably request for the purpose of carrying out the intent of this Agreement.

(24)    **No Admissions.**  It is expressly understood and agreed that the terms hereof are contractual and not merely recitals, and that the agreements and obligations contained herein and the consideration transferred is to compromise and settle uncertain claims and claim amounts, to avoid further litigation, and to buy peace. This Agreement is executed for the sole purpose of compromising and settling the matters involved in the Chapter 11 Cases and the Adversary Proceedings, and it is expressly understood and agreed, as a condition hereof, that this Agreement, and the consideration paid in accordance with the terms hereof, shall not constitute, be deemed to be or be construed as an admission of liability by any Party, or to indicate in any degree an admission of the truth or correctness of any of the claims asserted by any Party against any other.

(25)    **Parties to Bear Own Costs.**  Each of the Parties to this Agreement shall pay its own attorneys' fees and costs arising in connection with the negotiation and preparation of this Agreement, the claims released herein and the Chapter 11 Cases and the Adversary Proceedings.

(26)    **Modification.**  This Agreement may not be changed, modified or amended in any manner whatsoever except in a writing signed by all Parties.

(27)    **Authority and Competence to Execute and Settle.**  Each signatory to this Agreement represents and warrants that such person is duly authorized to bind the Party for whom such person acts. The Parties expressly represent and warrant on behalf of themselves and their heirs, legal representatives, successors, and assigns, that they are legally competent to execute this Agreement and that they do so of their own free will and accord, without reliance on any representation of any kind or character not expressly set forth herein. Each of the Parties represents and warrants that it is the sole legal owner of all right, title, and interest in and to every claim, right or other matter released in this Agreement and that the claims, rights and other matters released in this Agreement have not been assigned, transferred or sold, and are free of any encumbrance.

*[Signature Pages Follow]*

6089232v.13

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement as of the date set forth above.

North American Petroleum Corporation USA        Texas Capital Bank, N.A.

_____               _____

By:_____               By:_____

Its:_____              Its:_____

Date:_____                Date:_____

Prize Petroleum LLC                             Compass Bank

_____               _____

By:_____               By:_____

Its:_____              Its:_____

Date:_____                Date:_____

Petroflow Energy Ltd.                           Equal Energy US Inc.

_____               _____

By:_____               By:_____

Its:_____              Its:_____

Date:_____                Date:_____

                                                Equal Energy Ltd.

                                                _____

                                                By:_____

                                                Its:_____

                                                Date:_____

**Exhibit A**

**Equal APA**

*[See Exhibit 2 to the Order.]*

**Exhibit B**

Attached to and made a part of the Settlement and Release Agreement dated April 23, 2011, by and among (a) Assignors (b) Assignee, and (c) Equal and Equal Energy Ltd., each as defined below.

| | |
|---|---|
| **STATE OF OKLAHOMA** | § |
| | § |
| **COUNTY OF GRANT** | § |

## ASSIGNMENT OF TAX REBATE INTEREST

This ASSIGNMENT OF TAX REBATE INTEREST (this "**Assignment**") dated effective [▒▒▒▒▒▒▒], 2011 ("**Effective Date**"), is from **NORTH AMERICAN PETROLEUM CORPORATION USA** ("**NAPCUS**"), **PRIZE PETROLEUM LLC** ("**Prize**") and **PETROFLOW ENERGY LTD.** ("**Petroflow**," and, collectively with NAPCUS and Prize, the "**Assignors**"), whose addresses are 525 S. Main Street, Suite 1120, Tulsa, OK 74103, to **TEXAS CAPITAL BANK, N.A., AND COMPASS BANK** ("**Assignees**") whose addresses are Texas Capital Bank, N.A., 2000 McKinney Avenue, Suite 700, Dallas, TX 75201, and Compass Bank, 8333 Douglas Ave. Suite 820, Dallas. TX 75225, and **EQUAL ENERGY US INC.** ("**Equal**") whose address is 4801 Gaillardia Parkway, Suite 325, Oklahoma City, Oklahoma 73142. Assignors, Assignees and Equal are individually referred to as a "**Party**" and collectively referred to as the "**Parties.**"

**WHEREAS,** on May 25, 2010, NAPCUS and Prize, and on August 20, 2010, Petroflow, each commenced voluntary cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware;

**WHEREAS,** the Assignees asserted claims in the approximate amount of approximately $101,000,000 against Debtors on the Petition Date;

**WHEREAS,** on July 15, 2010, (a) the Assignors commenced an adversary proceeding against Equal and Equal Energy Ltd., which has been docketed with the Bankruptcy Court as N. Am. Petroleum Corp. USA v. Equal Energy U.S. Inc. et al. (In re N. Am. Petroleum Corp. USA), Adv. Case No. 10-51675 Case No. 10-51624 (CSS) (Bankr. D. Del.) and (b) Assignees commenced an adversary proceeding against NAPCUS, Prize and Equal, which has been docketed with the Bankruptcy Court as Compass Bank et al. v. N. Am. Petroleum Corp. USA (In re N. Am. Petroleum Corp. USA), Adv. Case No. 10-51624 Case No. 10-11707 (CSS) (Bankr. D. Del.); and

**WHEREAS,** the Parties have agreed to resolve their disputes based on the terms of a Settlement Agreement ("**Agreement**"). The execution and delivery of this Assignment is made in connection with that Agreement.

**NOW THEREFORE,** for good and valuable consideration to Assignors in hand paid by Assignees (the receipt and sufficiency of which are hereby acknowledged) and in accordance with the Agreement, the Parties hereby agree as follows:

1.     **Definitions**.  For purposes of this Assignment the following capitalized terms shall have the meanings herein ascribed to them below:

"**Oil and Gas Properties**" means oil and gas leases and wells and the related lands identified on Exhibit A, attached hereto.

"**Refunds and Rebates**" means all refunds or rebates for production taxes, severance taxes, or any other taxes related to the ownership of the Oil and Gas Properties or production therefrom, including specifically those related to production from horizontal wells, available under Oklahoma law for the period from June 1, 2009, through the Effective Date of this Assignment.

2.     **Assignment**.  Assignors hereby transfer, grant, convey and assign to Assignees 70% of Assignors' interest in the Refunds and Rebates.  The Parties acknowledge that contemporaneously herewith Assignors are executing an assignment to Equal of the remaining 30% of Assignors' interest in the Refunds and Rebates and agree that such assignment to Equal shall be interpreted consistently herewith without regard to the actual sequence of their execution, with the result that Assignees shall own 70% and Equal shall own 30% of Assignor's pre-conveyance interest in the Refunds and Rebates. Equal and Assignees hereby assign to each other any interest in the Refunds and Rebates necessary to accomplish the ownership division reflected in the previous sentence.

3.     **Application for Refunds and Rebates.**  Equal shall in the ordinary course of business and with reasonable diligence identify, apply for, and collect all available Refunds and Rebates attributable to Assignors' interests and make all payments to Assignees without deduction or offset.  Equal shall provide a copy of this Assignment to all appropriate governmental authorities and shall request that payments due to Assignees be made directly to Assignees in the proportions designated by Assignees.  Despite Equal's agreement to assign certain interests in the Refunds and Rebates to Assignees, Equal makes no representations or warranties regarding the amount or timing of the Refunds and Rebates being assigned to Assignees, and Assignees expressly acknowledge that Equal (i) shall not be responsible or liable for any failure of the governmental authorities to make payments directly to Equal (ii) has not guaranteed the amount or timing of the Refunds and Rebates or (iii) is under no obligation to pay a sum of Refunds and Rebates in any certain amount that may be anticipated by Assignees, or either of them.  Equal shall have no duty to commence administrative or legal action on behalf of Assignee as to any dispute Assignees may have with the governmental authorities concerning or related to the Refunds and Rebates or payment thereof.

4.     **Disbursement of Refunds and Rebates.**  Equal shall disburse all Refunds and Rebates attributable to Assignees' interest within thirty (30) days of their receipt by Equal.

5.     **Further Assurances**.  Each of the Parties agree the it will promptly execute and deliver such other and further instruments as may reasonably be requested by another Party and do such other and further acts as may be necessary or desirable to carry out more effectively the intent and purposes of this Assignment.  Furthermore, in the event that, under applicable federal or state statutes or regulations or by virtue of contractual obligations, a separate assignment is required to be executed by a Party on an approved form or on a separately executed instrument, such separate assignment shall be so executed, on such approved form or on such separate

assignment prepared by the requesting Party, in sufficient counterparts to satisfy any such statutory, regulatory or contractual requirements, all without charge to the requesting Party.

6. **Litigation Expense**. In the event it becomes necessary for any Party to commence or to become a party to any action or proceeding to enforce the provisions of the Assignment, the court or body before which the same shall be tried shall award to the prevailing party all costs and expenses thereof, including reasonable and documented attorney's fees, recoverable and documented court costs, and all other reasonable and documented expenses incurred solely in connection therewith.

7. **Complete Writing**. This Agreement contains the full and complete understanding of the Parties with respect to the matters covered hereby, and no statements, representations, understandings, writings or other communications made prior to the execution of this Agreement, unless expressly contained herein, shall be binding on the Parties.

8. **Successors and Assigns**. The provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties, their respective heirs, representatives, successors and assigns or anyone attempting to claim through said Parties.

9. **Invalidity**. In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, which other provisions shall remain in full force and effect.

10. **Execution in Counterpart**. This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures to this Assignment transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature, and shall be binding on the Parties.

11. **Governing Law**. This Agreement and any disputes in connection with, arising from, or relating in any way to this Agreement, or its subject, formation, validity, performance, interpretation or enforcement shall be governed by, construed and enforced in accordance with the laws of the State of Oklahoma, excluding the conflict of laws provisions thereof.

*[Signature Pages Follow]*

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNOR:

**NORTH AMERICAN PETROLEUM
CORPORATION USA**

By: _____
Name: _____
Title: _____

STATE OF [⬛⬛⬛⬛⬛]    §
                                      §
COUNTY OF [⬛⬛⬛⬛]    §

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of North American Petroleum Corporation USA. A Delaware corporation, on behalf of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____ day of _____, 2011.

_____
NOTARY PUBLIC, State of [⬛⬛⬛⬛⬛]

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNOR:

**PRIZE PETROLEUM LLC**

By: _____
Name: _____
Title: _____

STATE OF [▒▒▒▒▒▒▒▒] §
                                    §
COUNTY OF [▒▒▒▒▒▒] §

    The foregoing instrument was acknowledged before me on _____, 2011 by
_____, the _____ of Prize Petroleum LLC, on behalf of
said limited liability company.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____,
2011.

_____
NOTARY PUBLIC, State of [▒▒▒▒▒▒▒▒]

6091188v.14

EXECUTED as of the date set out above, but effective as of the Effective Date.

<div align="center">

ASSIGNOR:

**PETROFLOW ENERGY LTD.**

</div>

By: _____

Name: _____

Title: _____

STATE OF [ ▨▨▨▨ ] §

                  §

COUNTY OF [ ▨▨▨ ] §

      The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Petroflow Energy Ltd., on behalf of said limited company.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____ day of _____, 2011.

_____

NOTARY PUBLIC, State of [ ▨▨▨▨ ]

6091188v.14

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNEE:

**EQUAL ENERGY US INC.**

By:

By: _____
Name: _____
Title: _____

STATE OF [⬛⬛⬛⬛⬛] §
                        §
COUNTY OF [⬛⬛⬛⬛⬛] §

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Equal Energy US Inc., on behalf of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____, 2011.

_____
NOTARY PUBLIC, State of [⬛⬛⬛⬛⬛]

EXECUTED as of the date set out above, but effective as of the Effective Date.

SIGNATORY:

**TEXAS CAPITAL BANK, N.A.**

By:

By: _____
Name:_____
Title:_____

STATE OF [▩▩▩▩▩▩▩] §
                    §
COUNTY OF [▩▩▩▩▩▩▩] §

The foregoing instrument was acknowledged before me on _____, 2011 by
_____, the _____ of Texas
Capital Bank, N.A., on behalf of said bank.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____,
2011.

_____
NOTARY PUBLIC, State of [▩▩▩▩▩▩]

EXECUTED as of the date set out above, but effective as of the Effective Date.

SIGNATORY:

**COMPASS BANK**

By:

By: _____
Name: _____
Title: _____

STATE OF [▓▓▓▓▓▓▓▓] §
§
COUNTY OF [▓▓▓▓▓▓▓▓] §

     The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Compass Bank, on behalf of said bank.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____, 2011.

_____
NOTARY PUBLIC, State of [▓▓▓▓▓▓]

**Exhibit A**

Attached to and made a part of the Assignment of Tax Rebate Interest dated July 1, 2011, by and among (a) Assignors, (b) Assignee and (c) Lenders

| | | | | | |
|---|---|---|---|---|---|
| Sparta #1-3H | all | 3 | 14N | 4E | Lincoln |
| Bonus #1-4H | all | 4 | 14N | 4E | Lincoln |
| Anthony #1-9H | all | 9 | 14N | 4E | Lincoln |
| Sphinx #1-10H | all | 10 | 14N | 4E | Lincoln |
| Stavros #1-11H | all | 11 | 14N | 4E | Lincoln |
| Vesta #1-14H | all | 14 | 14N | 4E | Lincoln |
| Titan #1-15H | all | 15 | 14N | 4E | Lincoln |
| Chad #1-16H | all | 16 | 14N | 4E | Lincoln |
| Melosa #1-21H | all | 21 | 14N | 4E | Lincoln |
| Cupid #1-22H | all | 22 | 14N | 4E | Lincoln |
| Zephir #1-23H | all | 23 | 14N | 4E | Lincoln |
| Nectar #1-4H | all | 4 | 14N | 5E | Lincoln |
| Crete #1-5H | all | 5 | 14N | 5E | Lincoln |
| Midas #1-8H | all | 8 | 14N | 5E | Lincoln |
| Corinth #1-9H | all | 9 | 14N | 5E | Lincoln |
| Icarus #1-16H | all | 16 | 14N | 5E | Lincoln |
| Venus #1-17H | all | 17 | 14N | 5E | Lincoln |
| Sartain #1-21H | all | 21 | 14N | 5E | Lincoln |
| Erme #1-7H | all | 7 | 15N | 4E | Lincoln |
| Meen #1-8H | all | 8 | 15N | 4E | Lincoln |
| Lubin #1-9H | all | 9 | 15N | 4E | Lincoln |
| Foy #1-10H | all | 10 | 15N | 4E | Lincoln |
| Abo #1-11H | all | 11 | 15N | 4E | Lincoln |
| Gilbert #1-12H | all | 12 | 15N | 4E | Lincoln |
| Brixey #1-13H | all | 13 | 15N | 4E | Lincoln |
| Elizabeth #1-14H | all | 14 | 15N | 4E | Lincoln |
| Greenfield #1-15H | all | 15 | 15N | 4E | Lincoln |
| Balsam #1-16H | all | 16 | 15N | 4E | Lincoln |
| Elmo #1-17H | all | 17 | 15N | 4E | Lincoln |
| Alfred #1-18H | all | 18 | 15N | 4E | Lincoln |
| Canute #1-19H | all | 19 | 15N | 4E | Lincoln |
| Francisco #1-20H | all | 20 | 15N | 4E | Lincoln |
| Abel #1-21H | all | 21 | 15N | 4E | Lincoln |
| Achilles #1-22H | all | 22 | 15N | 4E | Lincoln |
| Xanthus #1-27H | all | 27 | 15N | 4E | Lincoln |
| Abraham #1-28H | all | 28 | 15N | 4E | Lincoln |

| | | | | | |
|---|---|---|---|---|---|
| Damascus #1-29H | all | 29 | 15N | 4E | Lincoln |
| Helm #1-33H | all | 33 | 15N | 4E | Lincoln |
| Goddess #1-34H | all | 34 | 15N | 4E | Lincoln |
| Acropolis #1-19H | all | 19 | 15N | 5E | Lincoln |
| Burl #1-20H | all | 20 | 15N | 5E | Lincoln |
| Dorians #1-29H | all | 29 | 15N | 5E | Lincoln |
| Homer 1-32H | all | 32 | 15N | 5E | Lincoln |
| Tiger #1-28H | W/2 | 28 | 17N | 1E | Logan |
| Flossie #1-33H | all | 33 | 17N | 1E | Logan |
| Cougar #1-35H | N/2 Sec. 34 & NW/4 Sec. 35 | 34 & 35 | 17N | 1E | Logan |
| Milky Way #1-20H | all | 20 | 17N | 1W | Logan |
| Saluki #1-4 | all | 4 | 24N | 7W | Garfield |
| Otterhound #2-8H | all | 8 | 24N | 7W | Garfield |
| St. Bernard #1-9 | all | 9 | 24N | 7W | Garfield |
| Manchester #1-17H | all | 17 | 25N | 7W | Grant |
| Maltese #1-29H | all | 29 | 25N | 7W | Grant |
| Newfoundland #1-7 | all | 7 | 25N | 8W | Grant |
| Heeler #1-15H | all | 15 | 25N | 8W | Grant |
| Afghan #1-16H | all | 16 | 25N | 8W | Grant |
| Border #1-17H | all | 17 | 25N | 8W | Grant |
| Whippet #1-19H | all | 19 | 25N | 8W | Grant |
| Sharpei #1-20H | all | 20 | 25N | 8W | Grant |
| Terrier #1-21H | all | 21 | 25N | 8W | Grant |
| Lowchen #2-23H | all | 23 | 25N | 8W | Grant |
| Pomeranian #1-28H | all | 28 | 25N | 8W | Grant |
| Eskimo #1-29H | all | 29 | 25N | 8W | Grant |
| Bloodhound #1-35H | all | 35 | 25N | 8W | Grant |
| Beagle #1-36H | all | 36 | 25N | 8W | Grant |

**Exhibit C**

Attached to and made a part of the Purchase and Sale Agreement, dated April 23, 2011, by and among (a) Assignors and (b) Assignee, each as defined below.

## ASSIGNMENT OF TAX REBATE INTEREST

This ASSIGNMENT OF TAX REBATE INTEREST (this "**Assignment**") dated effective July 1, 2011, 2011 ("**Effective Date**"), is entered into by and among (i) **NORTH AMERICAN PETROLEUM CORPORATION USA** ("**NAPCUS**"), **PRIZE PETROLEUM LLC** ("**Prize**") and **PETROFLOW ENERGY LTD.** ("**Petroflow**," and, collectively with NAPCUS and Prize, the "**Assignors**"), whose addresses are 525 S. Main Street, Suite 1120, Tulsa, Oklahoma 74103, (ii) **EQUAL ENERGY US INC.** ("**Assignee**") whose address is 4801 Gaillardia Parkway, Suite 325, Oklahoma City, Oklahoma 73142, and (iii) **TEXAS CAPITAL BANK, N.A. AND COMPASS BANK** (collectively, the "**Lenders**") whose addresses are Texas Capital Bank, N.A., 2000 McKinney Avenue, Suite 700, Dallas, TX 75201, and Compass Bank, 8333 Douglas Ave. Suite 820, Dallas. TX 75225. Assignors, Assignee and Lenders are individually referred to as a "**Party**" and collectively referred to as the "**Parties**."

**WHEREAS**, on May 25, 2010, NAPCUS and Prize, and on August 20, 2010, Petroflow, each commenced voluntary cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware;

**WHEREAS**, on July 15, 2010, (a) the Assignors commenced an adversary proceeding against Assignee and Equal Energy Ltd., which has been docketed with the Bankruptcy Court as N. Am. Petroleum Corp. USA v. Equal Energy U.S. Inc. et al. (In re N. Am. Petroleum Corp. USA), Adv. Case No. 10-51675 Case No. 10-51624 (CSS) (Bankr. D. Del.) and (b) Lenders commenced an adversary proceeding against NAPCUS, Prize and Assignee, which has been docketed with the Bankruptcy Court as Compass Bank et al. v. N. Am. Petroleum Corp. USA (In re N. Am. Petroleum Corp. USA), Adv. Case No. 10-51624 Case No. 10-11707 (CSS) (Bankr. D. Del.); and

**WHEREAS**, the Parties have agreed to resolve their disputes based on the terms of a Settlement Agreement ("**Agreement**"). The execution and delivery of this Assignment is made in connection with that Agreement and the Purchase and Sale Agreement, by and among NAPCUS and Prize, as sellers, Petroflow, as parent company of NAPCUS, and Assignee, as purchaser (the "**Equal APA**").

**NOW THEREFORE**, for good and valuable consideration to Assignors in hand paid by Assignee (the receipt and sufficiency of which are hereby acknowledged) and in accordance with the Agreement and the Equal APA, the Parties hereby agree as follows:

1.     **Definitions**.  For purposes of this Assignment the following capitalized terms shall have the meanings herein ascribed to them below:

"**Oil and Gas Properties**" means oil and gas leases and wells and the related lands identified on Exhibit A, attached hereto.

"**Refunds and Rebates**" means all refunds or rebates for production taxes, severance taxes, or any other taxes related to the ownership of the Oil and Gas Properties or production therefrom, including specifically those related to production from horizontal wells, available under Oklahoma law for the period from June 1, 2009, through the Effective Date of this Assignment.

2.  **Assignment**.  Assignors hereby transfer, grant, convey and assign to Assignee 30% of Assignors' interest in the Refunds and Rebates.  The Parties acknowledge that contemporaneously herewith Assignors are executing an assignment to Lenders of the remaining 70% of Assignors' interest in the Refunds and Rebates and agree that such assignment to Lenders shall be interpreted consistently herewith without regard to the actual sequence of their execution, with the result that Assignee shall own 30% and Lenders shall own 70% of Assignor's pre-conveyance interest in the Refunds and Rebates.  Lenders and Assignee hereby assign to each other any interest in the Refunds and Rebates necessary to accomplish the ownership division reflected in the previous sentence.

3.  **Further Assurances**.  Each of the Parties agree the it will promptly execute and deliver such other and further instruments as may reasonably be requested by another Party and do such other and further acts as may be necessary or desirable to carry out more effectively the intent and purposes of this Assignment.  Furthermore, in the event that, under applicable federal or state statutes or regulations or by virtue of contractual obligations, a separate assignment is required to be executed by a Party on an approved form or on a separately executed instrument, such separate assignment shall be so executed, on such approved form or on such separate assignment prepared by the requesting Party, in sufficient counterparts to satisfy any such statutory, regulatory or contractual requirements, all without charge to the requesting Party.

4.  **Litigation Expense**.  In the event it becomes necessary for any Party to commence or to become a party to any action or proceeding to enforce the provisions of the Assignment, the court or body before which the same shall be tried shall award to the prevailing party all costs and expenses thereof, including reasonable and documented attorney's fees, recoverable and documented court costs, and all other reasonable and documented expenses incurred solely in connection therewith.

5.  **Complete Writing**.  This Agreement contains the full and complete understanding of the Parties with respect to the matters covered hereby, and no statements, representations, understandings, writings or other communications made prior to the execution of this Agreement, unless expressly contained herein, shall be binding on the Parties.

6.  **Successors and Assigns**.  The provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties, their respective heirs, representatives, successors and assigns or anyone attempting to claim through said Parties.

7.  **Invalidity**.  In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, which other provisions shall remain in full force and effect.

8.  **Execution in Counterpart**.  This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signatures to this Assignment transmitted by facsimile

transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature, and shall be binding on the Parties.

9.      **Governing Law**.  This Agreement and any disputes in connection with, arising from, or relating in any way to this Agreement, or its subject, formation, validity, performance, interpretation or enforcement shall be governed by, construed and enforced in accordance with the laws of the State of Oklahoma, excluding the conflict of laws provisions thereof.

*[Signature Pages Follow]*

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNOR:

**NORTH AMERICAN PETROLEUM
CORPORATION USA**

By: _____
Name: _____
Title: _____

STATE OF [＿＿＿＿＿＿]　§
　　　　　　　　　　　§
COUNTY OF [＿＿＿＿＿]　§

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of North American Petroleum Corporation USA. A Delaware corporation, on behalf of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____ day of _____, 2011.

_____
NOTARY PUBLIC, State of [＿＿＿＿＿＿]

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNOR:

**PRIZE PETROLEUM LLC**

By: _____
Name: _____
Title: _____

STATE OF [▨▨▨▨▨] §
§
COUNTY OF [▨▨▨▨▨] §

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Prize Petroleum LLC, on behalf of said limited liability company.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____, 2011.

_____
NOTARY PUBLIC, State of [▨▨▨▨▨]

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNOR:

**PETROFLOW ENERGY LTD.**

By: _____
Name: _____
Title: _____

STATE OF [░░░░░░░░] §
§
COUNTY OF [░░░░░░] §

  The foregoing instrument was acknowledged before me on _____, 2011 by
_____, the _____ of Petroflow Energy Ltd., on behalf of
said limited company.

  GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____,
2011.

_____
NOTARY PUBLIC, State of [░░░░░░░░]

EXECUTED as of the date set out above, but effective as of the Effective Date.

ASSIGNEE:

**EQUAL ENERGY US INC.**

By:

By: _____
Name:_____
Title:_____

STATE OF [▨▨▨▨▨▨▨]     §
                                        §
COUNTY OF [▨▨▨▨▨▨▨]     §

The foregoing instrument was acknowledged before me on _____, 2011 by
_____, the _____ of Equal
Energy US Inc., on behalf of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____,
2011.

_____
NOTARY PUBLIC, State of [▨▨▨▨▨▨]

EXECUTED as of the date set out above, but effective as of the Effective Date.

<div style="margin-left:40%">

SIGNATORY:

**TEXAS CAPITAL BANK, N.A.**

By:

By: _____

Name: _____

Title: _____

</div>

STATE OF [▓▓▓▓▓▓▓▓▓] §

                   §

COUNTY OF [▓▓▓▓▓▓▓▓] §

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Texas Capital Bank, N.A., on behalf of said bank.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ day of _____, 2011.

                       _____

                       NOTARY PUBLIC, State of [▓▓▓▓▓▓▓]

EXECUTED as of the date set out above, but effective as of the Effective Date.

SIGNATORY:

**COMPASS BANK**

By:

By: _____
Name:_____
Title:_____

STATE OF [▓▓▓▓▓▓▓▓▓] §
§
COUNTY OF [▓▓▓▓▓▓▓▓▓] §

The foregoing instrument was acknowledged before me on _____, 2011 by _____, the _____ of Compass Bank, on behalf of said bank.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ____day of _____, 2011.

_____
NOTARY PUBLIC, State of [▓▓▓▓▓▓▓]

**Exhibit A**

EXHIBIT "A"

Attached to and made a part of the Assignment of Tax Rebate Interest dated July 1, 2011, by and among (a) Assignors, (b) Assignee and (c) Lenders

| | | | | | |
|---|---|---|---|---|---|
| Sparta #1-3H | all | 3 | 14N | 4E | Lincoln |
| Bonus #1-4H | all | 4 | 14N | 4E | Lincoln |
| Anthony #1-9H | all | 9 | 14N | 4E | Lincoln |
| Sphinx #1-10H | all | 10 | 14N | 4E | Lincoln |
| Stavros #1-11H | all | 11 | 14N | 4E | Lincoln |
| Vesta #1-14H | all | 14 | 14N | 4E | Lincoln |
| Titan #1-15H | all | 15 | 14N | 4E | Lincoln |
| Chad #1-16H | all | 16 | 14N | 4E | Lincoln |
| Melosa #1-21H | all | 21 | 14N | 4E | Lincoln |
| Cupid #1-22H | all | 22 | 14N | 4E | Lincoln |
| Zephir #1-23H | all | 23 | 14N | 4E | Lincoln |
| Nectar #1-4H | all | 4 | 14N | 5E | Lincoln |
| Crete #1-5H | all | 5 | 14N | 5E | Lincoln |
| Midas #1-8H | all | 8 | 14N | 5E | Lincoln |
| Corinth #1-9H | all | 9 | 14N | 5E | Lincoln |
| Icarus #1-16H | all | 16 | 14N | 5E | Lincoln |
| Venus #1-17H | all | 17 | 14N | 5E | Lincoln |
| Sartain #1-21H | all | 21 | 14N | 5E | Lincoln |
| Erme #1-7H | all | 7 | 15N | 4E | Lincoln |
| Meen #1-8H | all | 8 | 15N | 4E | Lincoln |
| Lubin #1-9H | all | 9 | 15N | 4E | Lincoln |
| Foy #1-10H | all | 10 | 15N | 4E | Lincoln |
| Abo #1-11H | all | 11 | 15N | 4E | Lincoln |
| Gilbert #1-12H | all | 12 | 15N | 4E | Lincoln |
| Brixey #1-13H | all | 13 | 15N | 4E | Lincoln |
| Elizabeth #1-14H | all | 14 | 15N | 4E | Lincoln |
| Greenfield #1-15H | all | 15 | 15N | 4E | Lincoln |
| Balsam #1-16H | all | 16 | 15N | 4E | Lincoln |
| Elmo #1-17H | all | 17 | 15N | 4E | Lincoln |
| Alfred #1-18H | all | 18 | 15N | 4E | Lincoln |
| Canute #1-19H | all | 19 | 15N | 4E | Lincoln |
| Francisco #1-20H | all | 20 | 15N | 4E | Lincoln |
| Abel #1-21H | all | 21 | 15N | 4E | Lincoln |
| Achilles #1-22H | all | 22 | 15N | 4E | Lincoln |
| Xanthus #1-27H | all | 27 | 15N | 4E | Lincoln |
| Abraham #1-28H | all | 28 | 15N | 4E | Lincoln |

| | | | | | |
|---|---|---|---|---|---|
| Damascus #1-29H | all | 29 | 15N | 4E | Lincoln |
| Helm #1-33H | all | 33 | 15N | 4E | Lincoln |
| Goddess #1-34H | all | 34 | 15N | 4E | Lincoln |
| Acropolis #1-19H | all | 19 | 15N | 5E | Lincoln |
| Burl #1-20H | all | 20 | 15N | 5E | Lincoln |
| Dorians #1-29H | all | 29 | 15N | 5E | Lincoln |
| Homer 1-32H | all | 32 | 15N | 5E | Lincoln |
| Tiger #1-28H | W/2 | 28 | 17N | 1E | Logan |
| Flossie #1-33H | all | 33 | 17N | 1E | Logan |
| Cougar #1-35H | N/2 Sec. 34 & NW/4 Sec. 35 | 34 & 35 | 17N | 1E | Logan |
| Milky Way #1-20H | all | 20 | 17N | 1W | Logan |
| Saluki #1-4 | all | 4 | 24N | 7W | Garfield |
| Otterhound #2-8H | all | 8 | 24N | 7W | Garfield |
| St. Bernard #1-9 | all | 9 | 24N | 7W | Garfield |
| Manchester #1-17H | all | 17 | 25N | 7W | Grant |
| Maltese #1-29H | all | 29 | 25N | 7W | Grant |
| Newfoundland #1-7 | all | 7 | 25N | 8W | Grant |
| Heeler #1-15H | all | 15 | 25N | 8W | Grant |
| Afghan #1-16H | all | 16 | 25N | 8W | Grant |
| Border #1-17H | all | 17 | 25N | 8W | Grant |
| Whippet #1-19H | all | 19 | 25N | 8W | Grant |
| Sharpei #1-20H | all | 20 | 25N | 8W | Grant |
| Terrier #1-21H | all | 21 | 25N | 8W | Grant |
| Lowchen #2-23H | all | 23 | 25N | 8W | Grant |
| Pomeranian #1-28H | all | 28 | 25N | 8W | Grant |
| Eskimo #1-29H | all | 29 | 25N | 8W | Grant |
| Bloodhound #1-35H | all | 35 | 25N | 8W | Grant |
| Beagle #1-36H | all | 36 | 25N | 8W | Grant |